UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**JOSEPH UNGARELLI,**

    **Plaintiff,**

**v.**                                                   **Case No.: 5:12cv73/MP/CJK**

**H. LOPEZ, et al.,**

    **Defendants.**
_____/

**ORDER and**
**REPORT AND RECOMMENDATION**

Plaintiff, proceeding *pro se*, has filed a third amended civil rights complaint pursuant to 28 U.S.C. § 1331. (Doc. 21). Upon review of the amended complaint, the court concludes that plaintiff has not presented an actionable claim, and that the complaint should be dismissed.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is currently confined at Federal Correctional Institution Marianna ("FCI Marianna"). Plaintiff's complaint names eight defendants–Director of the Bureau of Prisons Charles E. Samuels, Jr., Regional Director Helen J. Marberry, former FCI Marianna Warden Paige Augustine, current FCI Marianna Warden N.C. English, Assistant Warden of FCI Marianna's medical department A.W. Lowe,

Medical Director Dr. Hector Lopez, Medical Provider "Abad," and Medical Provider "Hassan." (Doc. 21, pp. 2-3). Plaintiff claims that "BOP Director Charles E. Samuels Jr., Regional Director Southern Regional Office Helen J. Marberry, Former Warden Paige Augustine, Warden N.C. English, Assistant Warden Lowe – are all indirectly responsible for all of the CONSTITUTIONAL violations of the Plaintiff which shows direct Deliberate Indifference . . . ." (Doc. 21, p. 6). Plaintiff argues the defendants failed to address his inadequate medical treatment and disregarded his serious medical needs, of which they should have known because of various complaints concerning FCI Marianna's medical treatment, inmate grievances, and lawsuits. (Doc. 21, p. 6). Plaintiff further contends that the defendants failed to adequately address the grievances and medical problems once such claims were brought to their attention through the "numerous administrative grievances filed by the Plaintiff for which the Record will support which went all the way to Washington on more than one occasion . . . ." (Doc. 21, pp. 6-7). Instead, the defendants "found excuses" to delay and deny plaintiff's grievances. (Doc. 21, p. 7). Because the defendants "failed to adequately deal with such complaints" they are "ALL liable for the series of events and the deprivation of plaintiff's Constitutional rights." (Doc. 21, p. 7).

Plaintiff explains that in June 2008 he slipped and fell on a wet floor, "hyper extending" his left knee. (Doc. 21, p. 7). Plaintiff's supervisor called and alerted defendant Abad at the medical station, and Abad directed that plaintiff should be sent "back to his unit" and should fill out a "cop-out by his counselor." (Doc. 21, p. 7). Plaintiff's counselor's office was up three flights of stairs and half a mile from where he fell. Plaintiff struggled to walk to the counselor's office, but defendant Abad insisted that plaintiff return to work and fill out the cop-out form so he could be seen

by medical the next day. Plaintiff avers he was not called down to medical until two days later. (Doc. 21, p. 8).

Other deprivations are set out. Plaintiff alleges that defendant Abad refused to provide distilled water for plaintiff's "C-pap" machine, despite giving other inmates distilled water for their machines. (Doc. 21, p. 8). Plaintiff was also prescribed tension bands by defendant Guzman, to aid in rehabilitating a torn tendon. Defendant Abad, however, gave plaintiff "ace bandages to use like tension bands." After the bandages were confiscated by an officer, defendant Abad told plaintiff he was "not allowed to have [the bandages] in the dorm." Plaintiff doubts the veracity of this statement, because such bandages were given out by medical and sold at the commissary. (Doc. 21, p. 8). Later, plaintiff went to see the new medical director at FCI Marianna, "Mr. Sea," who gave plaintiff six ace bandages to use in place of the tension bands.

In response to another medical need, defendant, Dr. Lopez, is said to have delayed proper medical care by failing to act or provide treatment for a growth on plaintiff's back that first occurred on January 30, 2009, and still causes plaintiff pain. (Doc. 21, p. 9). Specifically, Dr. Lopez denied an ultrasound of plaintiff's back to check the size of the mass and whether it had grown. (Doc. 21, p. 9). Plaintiff avers that a previous ultra sound showed "vascular growth and Ms. Hassan was worried it may be cancerous or something bad." Four and a half years after discovery, plaintiff had surgery to remove the mass. (Doc. 21, p. 9). Plaintiff claims he suffered some "continued damage from the untimely delays" including herniated discs, which have left him unable to wash his back or properly use the bathroom. After the surgery, plaintiff requested therapy to correct "the herniated discs which were damaged" by

the procedure, but Dr. Lopez refused the necessary rehabilitation because FCI Marianna did not offer the requested therapy. (Doc. 21, p. 10).

Plaintiff next claims that defendant Hassan failed to provide plaintiff with medical treatment despite "first hand knowledge of the pain and suffering by the plaintiff, due to numerous tests which showed conclusively that continuous growth and the pain the plaintiff was suffering . . . ." (Doc. 21, p. 11). Defendant Hassan knew of Dr. Lopez's "untimely delays" in treatment and defendant Hassan "failed to go above Dr. Lopez to Administration office with such information." (Doc. 21, p. 11). Instead of getting treatment for plaintiff, defendant Hassan diagnosed lower back lumbago in an attempt to cover up for Dr. Lopez's "unconstitutional treatment." (Doc. 21, p. 11).

Relying upon these allegations, plaintiff claims a violation of his Eighth Amendment rights because the defendants engaged in "Wanton Infliction of Pain," and showed "Deliberate Indifference" to serious medical needs. (Doc. 21, p. 12). Plaintiff requests the court order immediate medical treatment and medical supplies. He further seeks a "certain amount" of three million dollars for pain and suffering, caused by "improper care." (Doc. 21, p. 12).

## DISCUSSION

Because plaintiff is a prisoner, the court is required to dismiss his complaint if the court determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether

the complaint states a claim upon which relief may be granted, the Court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. at 1968-69 (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). The complaint is also subject to dismissal for failure to state a claim if the allegations – on their face – show that an affirmative defense bars recovery on plaintiff's claims. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007) (reiterating that principle and providing, as an example, that if a complaint's allegations show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim).

The facts as presented in plaintiff's complaint fail to support a viable claim for relief under § 1331 as to the named defendants. Specifically, as to Director Samuels, Warden Augustine, Warden English, and Assistant Warden Lowe, plaintiff was previously informed in the court's amend orders (docs. 13, 20) that he could not hold these defendants liable for the conduct of the medical staff. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Polk Cnty. v. Dodson*, 454 U.S. 312,

102 S. Ct. 445, 70 L. Ed. 2d 509 (1981); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "The mere right to control, without any control or direction having been exercised and without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 (1979). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The Eleventh Circuit in *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008), set forth the limited circumstances in which a causal connection can be shown sufficient to render a supervisor liable on a § 1983 claim. The causal connection can be established:

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1322 (citing *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)). Here, instead of heeding the court's advice, plaintiff kept the same defendants (removing only Attorney General Holder) and added two additional defendants who plaintiff seeks to hold liable in their supervisory capacity–Regional Director Marberry and Warden Augustine.[1] (Doc. 21, p. 2). Plaintiff seeks to hold these several defendants

---

[1] Plaintiff was cautioned in the court's previous amend order (doc. 13) that he could not hold defendant Augustine liable for the conduct of her subordinates unless plaintiff is able to show a causal connection.

liable for the alleged acts of their subordinates. Plaintiff has demonstrated no causal connection implicating the aforementioned defendants and pleads only conclusory assertions that the defendants knew or should have known of the alleged conduct at issue. Plaintiff seems to recognize the defects in his claims and admits that defendants Samuels, Marberry, Augustine, English, and Lowe "are all indirectly responsible for all of the CONSTITUTIONAL violations . . . ." Plaintiff has been directly cautioned concerning the inclusion of these defendants based solely upon the alleged conduct of their subordinates. (docs. 13, 20). The court further advised plaintiff that conclusory assertions against these defendants would not be sufficient to impute liability. The plaintiff has ignored these admonitions. At this point, then, the undersigned must find that the complaint would fail to state a viable basis for recovery under § 1983 against defendants Samuels, Marberry, Augustine, English, and Lowe, and therefore, fails as a *Bivens* claim as well. *See Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) ("[C]ourts generally apply § 1983 law to *Bivens* cases." (*citing Butz v. Economou,* 438 U.S. 478, 500 (1978) (A federal official sued under *Bivens* has the same immunity as a similar state official sued for identical violation under § 1983.)); *Dean* [*v. Gladney*], 621 F.2d at 1336 (As in § 1983 cases, liability in *Bivens* actions cannot be based upon theory of respondeat superior.))).

As to defendants Abad, Hassan, and Lopez, plaintiff has not stated a claim upon which relief may be granted. To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must prove three elements. First, the plaintiff must demonstrate "an objectively serious medical need" so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations and citations omitted). "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment

or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal marks omitted). The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle*, 429 U.S. at 105). Deliberate indifference is established only when the plaintiff demonstrates that the official knew of and disregarded an excessive risk to his health or safety; in other words, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official's response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258. Notably, where the inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)); *see also Woody v. Cronic*, 401 F. App'x. 509, 512 (11th Cir. 2010) (unpublished opinion) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference."). Indeed, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033; *Murrell*

*v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[2]  In order to satisfy the final element of an Eighth Amendment claim, a plaintiff must show that the official's deliberate indifference caused his injury.  *Taylor*, 221 F.3d at 1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

Delay in providing "diagnostic care and medical treatment known to be necessary" can qualify as deliberate indifference.  *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out.").  That delay, however, must be "tantamount to unnecessary and wanton infliction of pain," and "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment."  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994).  The Eleventh Circuit has found cognizable deliberate indifference claims when the prison officials delayed treatment for life-threatening emergencies and in "situations where it is apparent that delay would detrimentally exacerbate the medical problem."  *Hill* at 1187.  "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation."  *Id*. at 1187-88.

Plaintiff seeks to hold defendant Abad liable in part because she provided plaintiff with ace bandages instead of tension bands and provided water, other than

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

distilled water, for his C-pap machine. As discussed above, claims that take issue with the sufficiency and type of treatment are not cognizable under § 1983 or § 1331. *See Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033; *Murrell*, 615 F.2d at 310 n.4. Plaintiff has not shown that the medical treatment provided to him by defendant Abad was "so grossly incompetent, inadequate, or excessive as to shock the conscience." *Harris*, 941 F.2d at 1505. Again, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Id*. Moreover, instead of acting towards the plaintiff with deliberate indifference to his medical conditions, defendant Abad appears to have required plaintiff to go through the proper procedures and requirements necessary to be seen by FCI Marianna's medical staff. After completing the necessary forms, plaintiff was eventually seen by the medical staff. Finally, plaintiff also fails to show that defendant Abad's conduct made his alleged conditions worse in any respect, or that defendant Abad possessed the "subjective intent . . . to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. In truth, the alleged missteps attributed to Abad are so trivial, that no court could seriously entertain them as constitutional violations.

As to defendant Hassan, plaintiff makes only conclusory assertions of wrongdoing and conspiracy. Plaintiff specifically discusses defendant Hassan's medical diagnosis of his back condition as "lower back lumbago" and refusal to allow him to undergo physical therapy. (Doc. 21, pp. 10-11). Plaintiff's complaint further alleges that defendants Hassan and Lopez discussed the possibility of plaintiff undergoing a second ultrasound on his lower back, but that Dr. Lopez ultimately decided against ordering it. (Doc. 21, p. 9). Plaintiff also posits that defendant Hassan discussed her concerns regarding plaintiff's back with Dr. Lopez. Plaintiff's medical condition was attended to and evaluated by defendant Hassan, who in

conjunction with defendant Lopez decided against the course of treatment sought by the plaintiff. *Cf. Bauer v. Kramer*, 424 F. App'x 917, 919 (11th Cir. 2011) ("A nurse is not deliberately indifferent when she reasonably follows a doctor's orders by administering prescribed medication to an inmate."). Such behavior does not evidence deliberate indifference. *See Woody*, 401 F. Appx. at 512 ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.").

Plaintiff has also not fairly alleged deliberate indifference as to Dr. Lopez. Plaintiff's claims against Dr. Lopez are conclusory in nature and unsupported by plaintiff's own recollection of events. Specifically, plaintiff faults Dr. Lopez for not "carry[ing] out Medical Orders by Medical Professionals and outright denial of medical treatment even after he was notified by Ms. Hassan and others of the increased growth on plaintiffs lower back . . . ." (Doc. 21, p. 9). Plaintiff does not indicate who the other "medical professionals" are or what specific opinions these medical professionals had concerning plaintiff's back. While plaintiff alleges defendant Hassan expressed the opinion that a previous back ultra sound "showed vascular growth" that could potentially be cancerous in September 2011, he also opines that Hassan diagnosed "lower back lumbago" only a few months earlier in April 2011. Moreover, Dr. Lopez did not ignore plaintiff's back condition; instead Lopez considered the option of having a second ultrasound done and ultimately decided against doing so. *See Bismark v. Fisher*, 213 F. App'x 892, 896 (11th Cir. 2007) ("'[A] simple difference in medical opinion' does not constitute deliberate indifference." (quoting *Waldrop*, 871 F.2d at 1033)). Similarly, plaintiff claims that defendant Lopez failed to provide proper medical treatment for an extended period of time, yet during the alleged period of no medical care plaintiff received an

evaluation of the lower back pain from defendant Hassan, underwent "numerous tests" on his back to examine the growth including an ultrasound of his back, and had surgery on his lower back to remove the "mass." (Doc. 21, pp. 9-11). *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (noting, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment"). Plainly stated, plaintiff received diagnostic and treatment procedures during the very time he says Dr. Lopez was engaged in a course of intentional indifference.

As to the herniated discs, plaintiff received an additional MRI in September 2013, shortly after his back surgery, revealing disc herniations at C5-C6. Plaintiff faults defendants Lopez and Hassan for denying the requested back therapy for the disc herniations. Plaintiff's disagreement with the defendants is thus over the type of medical treatment he should have received (a second ultrasound or a specific type of therapy).[3] Plaintiff has not shown defendant Lopez ignored his medical problems, only that Lopez treated them in a manner inconsistent with how plaintiff believed they should be treated. Nor has plaintiff suggested plausible facts showing defendant Lopez's actions to be so inadequate as to "constitute an unnecessary and wanton infliction of pain" rather than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258. Such claims are not sufficient to show that the defendants acted with deliberate indifference. *Harris*, 941 F.2d at 1507; *Woody*, 401 F. App'x. at 512. In

---

[3] The defendants have not denied plaintiff rehabilitation or therapy to treat previous conditions and have given plaintiff items such as ace bandages to perform therapy when appropriate. (Doc. 21, p. 8).

a light most favorable to plaintiff, the complaint merely alleges incidents of medical negligence. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.").

Plaintiff also seeks to hold defendants Hassan, Lopez, and Abad liable in their official capacities. As previously instructed, plaintiff cannot hold the defendants liable in their official capacities under *Bivens*. "*Bivens* only applies to claims against federal officers in their individual capacities; it does not create a cause of action against federal officers sued in their official capacities." *Sharma v. Drug Enforcement Agency*, 511 F. App'x 898, 901 (11th Cir. 2013) (citing *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 69-71 (2001)).

Finally, plaintiff has filed a motion to appoint counsel (doc. 22). "[P]risoners raising civil rights claims . . . have no absolute constitutional right to counsel." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993). "Appointment of counsel in civil cases is, rather, a privilege 'justified only by exceptional circumstances,' such as the presence of 'facts and legal issues [which] are so novel or complex as to require the assistance of a trained practitioner.'" *Kilgo*, 983 F.2d at 193 (*quoting Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (brackets in original)); *see also Holt v. Ford,* 862 F.2d 850 (11th Cir. 1989). An additional consideration is "whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court." *Kilgo*, 983 F.2d at 193. Here, plaintiff alleges in support of his motion that he has is unable to afford the cost of a jury trial and is unable to "present such a case" due its complexity. (Doc. 22, p. 1). Significantly, plaintiff does not discuss the nature of the facts or legal issues that might arise in this matter. Having reviewed the

underlying civil rights complaints, the undersigned cannot identify any facts or legal issues so novel or complex as to merit the appointment of counsel. *See Kilgo*, 983 F.2d at 193 (*quoting Poole*, 819 F.2d at 1028). Plaintiff, moreover, has proven able to present his legal claims and facts in an intelligible manner. The problem here is not one of artful pleading; it is the nonexistence of actionable facts.

Plaintiff has had three opportunities to amend his claims. The previous amend orders provided guidance to the *pro se* plaintiff concerning the law governing the types of claims he has purported to advance. Upon consideration of the facts and theories relied upon by plaintiff, the undersigned is of the opinion that plaintiff cannot plead facts upon which his claims may advance in this court.

Accordingly, it is ORDERED:

Plaintiff's motion for appointment of counsel (doc. 22) is DENIED.

And it is respectfully RECOMMENDED

1. That plaintiff's claims be DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1915(A)(b)(1), for plaintiff's failure to state a claim upon which relief may be granted.

2. That the clerk be directed to close the file.

DONE AND ORDERED this 25th day of March, 2014.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).